UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| MICHAEL WELCH, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 5:19-cv-731-LCB ) |
| CITY OF HARTSELLE, ALABAMA, et al., | ) ) ) ) |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Defendant City of Hartselle, Alabama (the "City of Hartselle"), has filed a motion to dismiss (doc. 19). Plaintiff Michael Welch has filed a response (doc. 26), and the City of Hartselle filed a reply (doc. 29). Therefore, the motion to dismiss is ready for review. For the reasons discussed below, the motion to dismiss is granted.

## I.  BACKGROUND

The following allegations are taken from plaintiff's amended complaint (doc. 17). On or about May 14, 2017, two City of Hartselle police officers, Micah Host and Patrick Niles, responded to a call of domestic disturbance at plaintiff's home between plaintiff and his wife. (*Id.* at 2). Plaintiff is a deaf man. (*Id.*). Though he has cochlear implants, plaintiff alleges that he was substantially limited in his ability to hear the officers and in his ability to communicate with them. (*Id.*).

According to plaintiff, the officers were aware from prior interactions with him that he was deaf. (*Id.*).

Plaintiff asserts that, by the time the officers arrived, there was no domestic dispute. (*Id.*). Plaintiff was outside his home grilling steaks with two of his three daughters. (*Id.*). One of the officers spoke to plaintiff's wife and confirmed that there was no domestic violence issue. (*Id.*). The other officer approached plaintiff and told him to calm down. (*Id.* at 3). Plaintiff's eight-year old daughter helped plaintiff communicate with the officer, and there was an exchange between the officer and plaintiff via plaintiff's daughter. (*Id.* at 2-3). During that exchange, plaintiff told the officer that he had already calmed down and asked if the officers had a warrant. (*Id.* at 3). When the officer said, "no," plaintiff told the officer to leave him alone, that he had not done anything wrong. (*Id.*). The officer who spoke with plaintiff's wife came out of the house and conferred with the officer who was interacting with plaintiff. (*Id.* at 3). Although plaintiff asserts that he could not understand what the two officers were saying, he alleges that they discussed that there was no domestic violence. (*Id.*). Plaintiff alleges that he asked the officers to write things down for him, and they refused. (*Id.* at 3). Plaintiff then turned to the grill to check on his steaks, and he was taken down by one of the officers. (*Id.*). Plaintiff was ultimately tased, handcuffed, and arrested. (*Id.* at 4). As a result of the tasing, one of plaintiff's cochlear implants was destroyed. (*Id.*).

Plaintiff was convicted in city court of disorderly conduct and resisting arrest; however, these charges were dismissed on appeal to circuit court. (*Id*. at 4-5).

Plaintiff alleges, among other things, that the arrest and use of force against him flowed directly from the defendant officers' refusal to accommodate him by communicating directly with him in writing and by taking advantage of his inability to hear them. (*Id*. at 5). Plaintiff further alleges, among other things, that city officials acted with deliberate indifference by failing and refusing to take appropriate steps, such as implement policies and training, so that City of Hartselle police officers would communicate with hearing impaired persons as effectively as with others. (*Id*. at 6-7). Plaintiff alleges that, as a result of this inaction on the part of the City of Hartselle, the officers failed to accommodate him. (*Id*. at 7).

Plaintiff brings two claims against the City of Hartselle in his amended complaint: (1) a claim against the City of Hartselle under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and (2) a claim under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq*. The City of Hartselle filed a motion to dismiss both claims.

## II. STANDARD OF REVIEW

Rule 12(b)(6) permits a party to move to dismiss a complaint for, among other things, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, the Court must "accept[]

the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008) (quoting *Castro v. Sec'y of Homeland Sec*., 472 F.3d 1334, 1336 (11th Cir. 2006)). To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 679. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting, in part, Fed. R. Civ. P. 8(a)(2)). Thus, the Supreme Court has "suggested that courts considering motions to dismiss adopt a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 567 (2007)).

## III. DISCUSSION

As noted, plaintiff's amended complaint alleges two counts against the City of Hartselle, both of which the City of Hartselle has moved to dismiss: (1) Count V, a claim against the City of Hartselle under Section 504 of the Rehabilitation Act; and (2) Count VI, a claim under Title II of the ADA. Plaintiff, however, has agreed to the dismissal of Count V, his claim pursuant to Section 504 of the Rehabilitation Act. (Doc. 26, p. 4 n.1). Therefore, the Court will only consider the parties' arguments with respect to the ADA claim.

Plaintiff alleges that the City of Hartselle, through the actions of its officers, failed to accommodate him and discriminated against him by assaulting and arresting him because of his disability. (Doc. 17, p. 11). Plaintiff also alleges that "City officials, acting with deliberate indifference, failed and refused to implement policies and train officers regarding the handling of deaf persons like [plaintiff]." (*Id*.). Plaintiff alleges that these actions violated Title II of the ADA and, as a result, he is entitled to compensatory damages.

Title II of the ADA prohibits a public entity from discriminating against a qualified individual on account of the individual's disability. 42 U.S.C. § 12132; *Bircoll v. Miami-Dade County*, 480, F.3d 1072, 1081 (11th Cir. 2007). In particular, Title II states, "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the

benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity" 42 U.S.C. § 12132. There appears to be no dispute at this stage that plaintiff is a qualified individual with a disability within the meaning of Title II of the ADA or that the City of Hartselle is a public entity. Rather, the issues before the Court are whether (1) plaintiff has stated a claim for compensatory damages against the City of Hartselle for a violation of Title II of the ADA; and (2) to what extent Title II of the ADA applies in the context of an *ad hoc* police encounter such as the one here. The Court will first address the standard for stating a claim for compensatory damages against a public entity under Title II of the ADA.

### A. Claim for Compensatory Damages under Title II of the ADA

To state a claim under Title II of the ADA, a plaintiff must generally prove (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Bircoll*, 480 F.3d at 1083. "In the ordinary course, proof of a Title II or § 504 violation entitles a plaintiff only to injunctive relief." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019). To recover

compensatory damages for a violation of Title II of the ADA, a plaintiff must prove that the public entity engaged in intentional discrimination. *Id*.

Plaintiff and the City of Hartselle disagree about whose actions create liability on behalf of a public entity. Plaintiff argues that the City of Hartselle should be vicariously liable under Title II of the ADA for the actions of the defendant police officers in intentionally discriminating against him by failing to accommodate him on the day of the subject encounter and for an arrest motivated by discriminatory intent or misperception related to his disability. On the other hand, the City of Hartselle argues that, for it to be liable, plaintiff must show that an appropriate city official was deliberately indifferent. Plaintiff counters that, even applying the standard advocated by the City of Hartselle, he has stated a claim. A review of *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 345 (11th Cir. 2012), is instructive.

In *Liese,* 701 F.3d at 345, the Eleventh Circuit held that a plaintiff may demonstrate discriminatory intent by a showing of deliberate indifference. More specifically, the Eleventh Circuit found that, to hold an entity liable under Section 504 of the Rehabilitation Act, a plaintiff must demonstrate deliberate indifference on the part of "an *official* who at a minimum has *authority* to address the alleged discrimination and to institute corrective measures on the [entity's] behalf [and who] has *actual knowledge* of discrimination in the [entity's] programs and fails

7

adequately to respond." *Id*. at 349 (quoting *Gebser v. Lago Vista Indep. Sch. Dist*., 524 U.S. 274, 290 (1998)) (internal quotation marks omitted) (emphasis in original). To qualify, the official must be "high enough up the chain-of-command that his [or her] acts constitute an official decision by the [entity] not to remedy the misconduct." *Silberman*, 927 F.3d at 1134 (quoting *J.S., III by & through J.S. Jr. v. Houston Cty. Bd. of Educ.*, 877 F.3d 979, 987 (11th Cir. 2017)). To be sure, deliberate indifference is an "exacting standard" and an official's actions may be deemed deliberately indifferent if his or her response or lack thereof is clearly unreasonable in light of the known circumstances. *Id.*

Although *Liese* involved a claim under the Section 504 of the Rehabilitation Act, courts have applied the deliberate indifference standard employed by it to claims brought against public entities under Title II of the ADA. *See, e.g., Silberman*, 927 F.3d at 1134 (applying the deliberate indifference standard to a claim for compensatory damages in a Title II action and stating that, "[g]iven the textual similarities between the two statutes, 'the same standards govern' claims under both, and we 'rel[y] on cases construing [Title II and § 504] interchangeably.'") (quoting, in part, *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cty., Fla*., 610 F.3d 588, 604 (11th Cir. 2010)); *J.S., III by & through J.S. Jr.*, 877 F.3d at 987 ("Under Title IX (and, by extension, Title II and § 504), a plaintiff may establish intentional discrimination by showing deliberate indifference.").

In *Silberman*, 927 F.3d 1123, the Eleventh Circuit applied the *Liese* standard to a claim for compensatory damages under Title II of the ADA. A review of *Silberman* is helpful to the Court's analysis. In *Silberman*, the plaintiff sued the county transit agency, asserting that its bus drivers intentionally prevented him from riding on its buses based on his mental disability and need for a service dog in violation of Title II and the Rehabilitation Act. *Id*. at 1129. The district court determined that the county transit agency did not have the capacity to be sued and that the correct party was actually the county; however, the plaintiff declined to amend his complaint or otherwise state a claim, and his action was ultimately dismissed – a decision that the Eleventh Circuit ultimately affirmed. *Id*. at 1130. In doing so, however, the Eleventh Circuit considered whether – if plaintiff had sued the correct party, *i.e.*, the county – he would have stated a claim for compensatory damages under either Title II of the ADA or the Rehabilitation Act. *Id*. at 1133. Relying on *Liese*, the Eleventh Circuit ultimately concluded that the answer was "no." *Id*. 1135-36. The Eleventh Circuit rejected the argument that bus drivers were qualifying officials such that their actions would bind the county under the circumstances. *Id*. at 1135. The Eleventh Circuit reasoned that the bus drivers "simply aren't high enough up the org chart to permit a reasonable inference that, through their actions, they speak for the [entity] as a whole." *Id*. The Eleventh Circuit noted that the question was not whether the bus drivers had

9

complete discretion to make the initial decision to deny the plaintiff services, but rather "whether they had discretion at a 'key decision point' in the administrative process,' which they plainly didn't." *Id*. at 1136 (quoting, in part, *Liese*, 701 F.3d at 350). The Eleventh Circuit stated that, if it were enough that bus drivers played a key role in the decision to deny the plaintiff an accommodation in the first instance, the definition of "official" would be so broad as to encompass every single employee who is in the position to grant or deny an individual services. *Id*. This reading, the Eleventh Circuit observed, "would 'essentially eviscerate[] the requirement that there be a decision by an official,' thereby reducing the *Liese* standard to a variant of vicarious liability and making compensatory damages the rule rather than the exception." *Id*. at 1136 (quoting, in part, *Liese*, 701 F.3d at 349).

Despite the current state of the law in the Eleventh Circuit, plaintiff argues that the City of Hartselle should nonetheless be vicariously liable for the actions of the defendant police officers in failing to accommodate him by refusing to communicate in writing on the scene and by making a discriminatorily motivated arrest. To be sure, the application of vicarious liability in the Title II context is not a novel concept. *See, e.g.*, *Silberman*, 927 F.3d at 1134 n.6 (noting that the availability of *respondeat superior* liability for Title II and Section 504 claims remains an open question in the Eleventh Circuit and stating, "On the one hand, in

*T.W.* we pointed to our decision in *Mason v. Stallings*, 82 F.3d 1007 (11th Cir. 1996), as authorizing vicarious liability under Title I of the ADA—the employment chapter. On the other hand, there may be reason to think that *Mason's* logic doesn't extend to Title II and § 504, given that the Supreme Court rejected *respondeat superior* liability under Title IX in *Gebser*—the case from which we derived the *Liese* standard. *Gebser*, 524 U.S. at 285, 118 S. Ct. 1989."); *Gray v. Cummings*, 917 F.3d 1, 17 (1st Cir. 2019) (noting that a public entity's *respondeat superior* liability under Title II of the ADA is an open question); *Delano-Pyle v. Victoria Cty.*, 302 F.3d 567, 575 (5th Cir. 2002) (finding that a policymaker or official policy need not be identified for claims asserted under the ADA or Rehabilitation Act and affirming jury verdict against entity for actions of a line officer).

Nonetheless, the Court declines to forge new ground here. Rather, the Court will, as best it can, follow the existing law in the Eleventh Circuit. In other words, the Court will evaluate whether plaintiff has stated a claim under Title II of the ADA against the City of Hartselle based on the standard utilized in *Liese* and *Silberman*. *See, e.g.*, *Estate of Osorio v. Miami Dade County*, 717 F. App'x 957 (11th Cir. 2018) (unpublished opinion) (applying *Liese* to a Title II clam and finding that plaintiff had failed to plead facts to support the existence of an *official* who had authority to address the alleged discrimination, much less actual

11

knowledge of and deliberate indifference to the alleged discrimination of disabled individuals); *J.S., III by & through J.S. Jr.*, 877 F.3d at 987 (applying *Liese* to a Title II claim and finding that plaintiff must show the deliberate indifference of an official who at a minimum had authority to address the alleged discrimination and to institute corrective measures on the organization's behalf and who had actual knowledge of the discrimination in the organization's programs and failed to adequately respond); *see also Gray v. Cummings*, 917 F.3d 1, 17 n.11 (1st Cir. 2019) (noting that *Liese* finds *respondeat superior* liability not applicable and that Title II of the ADA is to be interpreted consistently with Section 504 of the Rehabilitation Act). Thus, the Court will consider whether plaintiff has sufficiently alleged that an official, who had actual knowledge of discrimination of deaf or hearing impaired persons by police officers, as well as authority to address said discrimination and to institute corrective measures, failed adequately to respond.

Applying that standard, the Court finds that plaintiff has failed to state a claim. Plaintiff has not alleged sufficient facts to give rise to a plausible inference that a city official had actual knowledge of discrimination against the deaf or hearing impaired by police officers, in addition to the authority to act and institute corrective measures, and failed to respond. "Specifically, the [amended] complaint fail[s] to specify *a single official* who allegedly had authority to address the alleged

discrimination, much less knowledge of and deliberate indifference to the alleged discrimination." *Osorio*, 717 F. App'x at 958 (emphasis added). Additionally, plaintiff's amended complaint fails to contain sufficient *facts* that, if accepted as true, state a plausible – not simply a conceivable – claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) ("Under [*Bell Atlantic Corp. v.*] *Twombly*'s construction of Rule 8, we conclude that respondent's complaint has not 'nudged [his] claims' of invidious discrimination 'across the line from conceivable to plausible.'") (quoting, in part, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That is, plaintiff has failed to allege any facts demonstrating that any official had complete discretion at a key decision point in the administrative process so as to remedy any alleged discriminatory conduct with respect to hearing impaired persons or that he or she knew that it was likely and deliberately failed to act. *Silberman*, 927 F.3d at 1136 (citing *Liese*, 701 F.3d at 350); *Liese*, 701 F.3d at 347. A formulaic recitation of the elements will not do. *Twombly*, 550 U.S. at 555.

Finally, it is unclear whether the City of Hartselle may be held liable under Title II of the ADA for a failure to train that resulted in the defendant police officers' failure to accommodate plaintiff, as plaintiff argues. *Cf. Mote v. Moody*, No. 3:17-CV-0406-LCB, 2019 WL 968862, at *5 (N.D. Ala. Feb. 28, 2019) (expressing doubt as to whether a failure to train claim exists under the

Rehabilitation Act); *Estate of Blanchia Smith v. Forest Manor, Inc.*, *et al.*, 7:16-cv-1774-RDP, 2018 WL 2770203 at *8 n.5 (N.D. Ala. June 8, 2018) (rejecting the suggestion that plaintiff provided support for any freestanding failure-to-train claim under the ADA); *Estate of Osorio v. Miami-Dade Cty.*, No. 16-20200-CIV, 2017 WL 3721505, at *3 (S.D. Fla. Feb. 10, 2017), *aff'd sub nom. Estate of Osorio v. Miami Dade Cty.*, 717 F. App'x 957 (11th Cir. 2018) ("To the extent that the Estate asserts that the County is directly liable under Title II for its failure to train the officers, it is unclear whether a failure to train claim exists under the statute."). *But cf. Sheeley v. City of Austin*, No. CIV. 12-2525 ADM/SER, 2015 WL 3576115, at *8 (D. Minn. June 5, 2015) ("First, similar to failure to train claims pursuant to § 1983, ADA claims asserting failure to train require proof of deliberate indifference. *Roberts v. City of Omaha,* 723 F.3d 966, 975–76 (8th Cir.2013). Accordingly, Plaintiffs can only prevail on an ADA failure to train claim by 'showing the city's deliberate indifference to his alleged right to be free from discrimination in the circumstances of this case.' *Id.* at 976."). Plaintiff relies on a footnote in an opinion from the Third Circuit in support of his proposition that such a claim exists. *See, e.g.*, *Haberle v. Troxell*, 885 F.3d 170, 179 n.7 (3d Cir. 2018) ("A municipality's failure to train its police is not actionable unless and until that failure leads directly to a denial of a needed accommodation or improper discrimination."). A footnote in a nonbinding decision from another circuit does

14

not sway the Court. In the absence of the recognition of a failure-to-train claim or theory under Title II by the Eleventh Circuit, the Court declines to permit plaintiff to proceed on such a theory here. Therefore, the Court finds that plaintiff has failed to state a claim for relief under Title II of the ADA.

### B. Applicability of Title II of the ADA to *Ad Hoc* Police Encounters

The Court now addresses the parties' arguments regarding the applicability of Title II of the ADA in the context of police encounters. The City of Hartselle encourages the Court to adopt the Fifth Circuit's finding in *Hainze v. Richards* that "Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life." 207 F.3d 795, 801 (5th Cir. 2000). Applying the *Hainze* standard, the City of Hartselle argues that plaintiff has not stated a claim against it because the facts in the amended complaint demonstrate that the scene was not secure and the defendant police officers had not had the opportunity to fully investigate the situation at the time of the alleged Title II violation(s). Plaintiff argues that the Eleventh Circuit has declined to adopt the *Hainze* standard; even applying that standard, however, plaintiff asserts that the facts in the amended complaint involve communication under non-exigent circumstances and thus Title II would apply. The Court finds two cases helpful to its analysis of the issue.

In *Bircoll v. Miami-Dade County*, 480 F.3d 1072 (11th Cir. 2007), the Eleventh Circuit acknowledged the debate and differences among the circuits with respect to the applicability of Title II in the context of a police encounter. In doing so, the Eleventh Circuit addressed *Hainze* and observed:

> As noted earlier, the Fifth Circuit in *Hainze* concluded that "Title II *does not apply* to an officer's on-the-street responses to reported disturbances or other similar incidents . . . *prior to* the officer's securing the scene and ensuring that there is no threat to human life." *Hainze,* 207 F.3d at 801 (emphasis added). In our view, the question is not so much one of the applicability of the ADA because Title II prohibits discrimination by a public entity by reason of Bircoll's disability. The exigent circumstances presented by criminal activity and the already onerous tasks of police on the scene go more to the reasonableness of the requested ADA modification than whether the ADA applies in the first instance.").

*Id*. at 1085; *see also Gray v. Cummings*, 917 F.3d 1, 17 (1st Cir. 2019) ("For present purposes, it is sufficient for us to assume, favorably to Gray, that Title II of the ADA applies to *ad hoc* police encounters (such as the encounter here) and that exigent circumstances may shed light on the reasonableness of an officer's actions."). Thus, in *Bircoll*, the Eleventh Circuit assumed that Title II of the ADA applied in the context of a police encounter and considered whether the police officer had failed to make a reasonable accommodation given the exigent circumstances presented by the criminal activity and the onerous tasks of police on the scene.

16

In *Estate of Osorio*, 17 F. App'x 957, the Eleventh Circuit considered, albeit in an unpublished opinion, whether the district court properly dismissed a complaint against Miami Dade County for a violation of Title II of the ADA. Notably, the Eleventh Circuit stated that it "has never addressed whether police officers can violate Title II of the ADA." *Id.* at 957. The Eleventh Circuit further stated that "assuming, *arguendo*, that such a claim is cognizable, we have held that a plaintiff seeking compensatory damages under the ADA must show 'discriminatory intent.'" *Id.* The Eleventh Circuit ultimately determined that the plaintiff had failed to show discriminatory intent. In doing so, the Eleventh Circuit agreed with the district court, which found that the plaintiff, an estate, had not pled facts to support the existence of a Miami-Dade official who had actual knowledge of the police's discrimination of disabled individuals and failed to act accordingly. *Id.* at 958.

Based on these cases and in the absence of clear guidance from the Eleventh Circuit, the Court declines to forge new ground here. Because the Eleventh Circuit has assumed that Title II applies in the context of *ad hoc* police encounters, the Court will do so here at the motion-to-dismiss stage. This, of course, does not change the outcome for plaintiff. This is because, even assuming that Title II of the ADA applied in the context of the encounter between plaintiff and the defendants officers, plaintiff has – for the reasons already stated – failed to state a claim.

## IV. CONCLUSION

Accordingly,

IT IS ORDERED that the motion to dismiss (doc. 19) is GRANTED. Counts IV and V of the amended complaint containing the claims against the City of Hartselle are DISMISSED WITH PREJUDICE.[1]

**DONE** and **ORDERED** October 22, 2019.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE

---

[1] As the Court has noted, plaintiff agreed to dismiss Count IV of the amended complaint.